UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| APRIL M. BRITT, | : | Civil Action No. 06-5810 (JJH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | MEMORANDUM |
| | : | OPINION |
| DONALD J. EINHORN, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**HUGHES, U.S.M.J.**

**I.      INTRODUCTION**

This matter is before the Court upon the Motion of Plaintiff April Britt ("Plaintiff") for a

New Trial on Damages [dkt. entry no. 41], returnable February 17, 2009.  Defendant Donald

Einhorn ("Defendant") filed opposition to this Motion on January 29, 2009.

**II.     BACKGROUND AND PROCEDURAL HISTORY**

This case arises from a motor vehicle accident involving Plaintiff and Defendant "that

occurred on February 1, 2005 at approximately 6:48 p.m. at or near the intersection of Route 31

Southbound and Payne Road in Clinton Township, NJ."  (Pl.'s Br. at 1.)  After the Court

granted Rule 50 motions in favor of the Plaintiff on the issues of Defendant's Negligence and

causation, and the lack of causal negligence on the part of the Plaintiff, the Court submitted the

assessment of damages to the jury.  "The jury returned a verdict in favor of the

Plaintiff and against Defendant for damages as follows:

> Pain and Suffering: $10,000.00
> Past Wages: $7,000.00
> Past Unreimbursed Medical Expenses: $2, 389.09
> Total Verdict:  $19, 389.00.

*Id*. at 1-2. On the issue of damages, the Plaintiff presented two treating physicians who testified

that as a result of the accident the Plaintiff developed Complex Regional Pain Syndrome, which

was debilitating and resulted in her total permanent disability. *Id*. at 2. Plaintiff also presented

testimony from "a vocational expert who testified that Plaintiff had lost past wages of over

$33,000.00, lost future earning capacity of $380,819.47 and loss of household services of

$305,000.00." *Id*.

> ### A.      Plaintiff's Arguments in Support of the Motion for a New Trial on Damages

Plaintiff makes five arguments in support of her Motion for a new trial on damages.

Specifically, Plaintiff argues that (1) the Court committed prejudicial error and plain error in

instructing the jury on the issue of the failure to mitigate damages where there was insufficient

evidence of failure to mitigate damages to go to the jury; (2) the Court erred by allowing Aaron

Sporn, M.D. to base his opinion upon a surveillance tape and to testify to opinions contained in

his second report that was submitted in violation of the discovery rules and Court Order; (3) the

verdict was inadequate; (4) the verdict was against the weight of the evidence; and (5) the Court

committed prejudicial and plain error in failing to give an adequate charge on causation. (Pl.'s

Br. at 3- 4.)

Plaintiff argues that she is entitled to a new trial on damages because Defendant failed to

present any evidence to support a failure to mitigate damages charge, and merely made the

argument "that the Plaintiff failed to undergo a stellate ganglion block which would have

relieved her suffering." *Id*. at 5. Plaintiff's expert Dr. Mortazavi testified that he explained to

Plaintiff that while a stellate ganglion block is generally safe, it does have substantial risks

including death. *Id*. at 6. Therefore, "Plaintiff decided against the block because she felt the

risks outweighed the benefits, a decision which Dr. Mortazavi supported." *Id*.  Plaintiff argues

that she "cannot be said to have failed to mitigate damages by failing to risk her own life in

declining a surgical procedure, which a stellate ganglion block is." *Id*. at 6-7. (citing *Cannon v.

New Jersey Bell Telephone*, 219 N.J. Super 304, 315 (App. Div.. A.D.)) (holding that defendant

did not present sufficient evidence to justify an instruction on plaintiff's duty to mitigate and

because "the undisputed evidence demonstrates sufficient risk incident to the surgery to warrant a

reasonable person to decline as a matter of law.") Therefore, Plaintiff further argues that "the

Court erred in submitting the issue of mitigation of damages to the jury . . . [because] it is very

highly likely that it did affect the outcome of the case, given the unreasonably low verdict for

pain and suffering in the face of admitted injury."

Plaintiff argues that the Court erred by allowing Dr. Sporn to express his opinions based

upon video surveillance because (a) a significant portion of the video relied upon was not even of

Plaintiff, but was of the Plaintiff's mother and (b) no testimony was offered that surveillance

videotapes are customarily relied upon by physicians in forming opinions. *Id*. at 12-13.  Plaintiff

also argues that the Court erred by allowing Dr. Sporn to testify to opinions contained in a second

report that reversed his original opinion on permanency because the report was out of time and

submitted after Plaintiff took trial depositions of her experts. *Id*.  Specifically, Plaintiff contends

that "there is authority to support precluding an IME doctor from commenting upon surveillance

videotapes because it is not the type of evidence customarily relied upon by medical experts." *Id*.

at 15 (citing *Kimberly Clark Corp. v. W.C.A.B. (Bullard)*, 790 A.2d 1072, 1076 (Pa. Cmwlth.

2001).  Plaintiff also contends that "it was plain error to allow Dr. Sporn to testify to opinions

without holding said opinions to a reasonable degree of medical certainty, which he never

testified to." *Id*. at 16.

Next, Plaintiff argues that a new trial on damages is required because the verdict was

inadequate. *Id*. at 19. Specifically, Plaintiff asserts that "[t]he verdict instantly was legally

inadequate and shocks the conscience, and was plainly wrong, grossly undervalued and/or failed

to compensate Plaintiff for omitted items of damage." *Id*. at 21. Plaintiff also asserts that "New

Jersey Courts have available the remedy of additur, but it has been held that the Federal Courts

cannot apply additur because it would violate the Seventh Amendment right to jury trial.

Therefore, if the New Jersey Courts would grant relief based upon additur, the Federal Court's

only choice would be to grant a new trial." *Id*. at 20.

Plaintiff argues that the verdict was against the weight of the evidence; thus, she is

entitled to a new trial. *Id*. at 21. Plaintiff contends that "[t]he only medical evidence defendant

offered was that of Aaron Sporn, M.D., who did not offer his opinions to a reasonable degree of

medical certainty [and] [u]nder New Jersey law, medical expert testimony must be made with [a]

reasonable degree of certainty." *Id*. at 22 (citing *Bondi v. Pole*, 246 N.J. Super,. 236, 587 A.2d

285 (App. Div. 1991)). Plaintiff asserts that besides the fact that Dr. Sporn's opinions were not

expressed to a reasonable degree of medical certainty, "his opinion was based upon a false

assumption that the Plaintiff was pictured in the video performing overhead range of motion

activities . . . when in fact the individual in the video was Plaintiff's mother." *Id*. at 23. Plaintiff

also asserts that "she had far more than $7,000.00 in lost wages under any calculation for those 3

years . . . [because] it was established on the record, but not in front of the jury that Plaintiff had

collected $15, 000.00 in past wages in maxing out her first party wage benefits." *Id*. Therefore,

Plaintiff contends that the verdict is obviously against the weight of the evidence and a new trial

on damages should be granted.

Lastly, Plaintiff argues that the Court committed prejudicial and plain error in failing to give an adequate charge on causation despite a request for the same. *Id*. Plaintiff maintains that "[t]he Court gave essentially no instruction on proximate cause and did not define the term, having used it[,] [when] '[t]he trial judge has a mandatory duty to charge the jury on the fundamental principles of law which control the case[.]'" *Id*. at 26 (quoting *State v. Holmes*, 208 N.J. Super. 480, 490 (App. Div. 1986) (citing *State v. Butler*, 27 N.J. 560, 594-95 (1985)).

###### B.     Defendant's Argument Opposing the Motion for a New Trial on Damages

Defendant argues that Plaintiff does not raise any objections in her Motion for a new trial on damages that justify awarding a new trial. Specifically, Defendant argues that (1) it was proper for the Court to permit Dr. Sporn to rely on videotape surveillance in formulating hi medical opinion, and his May 6, 2008 report did not prejudice Plaintiff since Dr. Sporn would have been permitted to comment on the surveillance tape pursuant to Federal Rule of Evidence 703; (2) the Court did not err in instructing the jury regarding Plaintiff's failure to mitigate damages by not receiving recommended medical treatment; (3) the verdict was neither inadequate nor against the weight of the evidence; and (4) the Court did not err in charging the jury on causation and the jury manifestly understood the Court's charge because they awarded damages to the Plaintiff. (Def.'s Opp'n Br. at 2-7.)

Defendant argues that the Court did not err by allowing Aaron Sporn, M.D. to base his opinion upon a surveillance tape and to testify to opinions contained in his second report because "Rule 703 permits an expert to comment on evidence adduced at trial." *Id*. at 2. Defendant asserts that because the surveillance tape at issue was clearly admissible, "[t]he condition of

"reasonably relied upon" (not "customarily relied upon" as stated by [P]laintiff)" is irrelevant

because it "only comes into play where there is an issue of reliance on facts or data that may not

be admissible." *Id.* Defendant also asserts that "[s]ince Dr. Sporn would have been permitted to

comment on the videotape at trial based upon Rule 703, his supplemental report did nothing

more than impart advance insight into Dr. Sporn's testimony, and clearly the [P]laintiff suffered

no prejudice."

Additionally, Defendant argues that the Court did not commit prejudicial error nor plain

error in instructing the jury on the issue of the failure to mitigate damages because there was

sufficient evidence of failure to mitigate damages to go to the jury. *Id.* at 3. Defendant points

out that "Dr. Mortazavi denied that stellate ganglion blocks, are "generally a low risk medical

intervention" although he acknowledged that he performs the type of block recommended to the

[P]laintiff 'about once a week' and on a 'fairly regular basis.'" *Id.* at 4. Defendant further points

out that Dr. Mortazavi "indicated that all of his patients are apprised of the same risks that were

outlined for the [P]laintiff and, nevertheless, they go ahead and have the procedure on a weekly

basis or on a fairly regular basis." *Id.* Defendant asserts that Plaintiff improperly cites *Dukes v.*

*Sebe*, 2007 WL 655041 (N.J. Super. App. Div.) 2007, in support of her position that the Court

erred by charging the jury on failure to mitigate damages because that case involved a far more

serious and invasive procedure than stellate ganglion blocks that are at issue in the instant case.

*Id.* at 5. Defendant also asserts that

> "[m]ore on point is *Albert v. Monarch Federal Sav. and Loan Ass'n.*, 327 N.J. Super. 462
> (App. Div. 2000) . . . in which the court affirmed the lower court's mitigation charge to
> the jury and held as follows: '[U]nless a surgical procedure poses a 'peril to life,' 'undue
> risk to health,' or 'anguish that goes beyond the bounds of reason,' a mitigation
> instruction is appropriate if evidence is presented that surgery 'offers a reasonable

prospect of restoration or relief from the disability.'"

*Id*. Defendant therefore maintains that the mitigation instruction in the instant case was proper because Plaintiff declined a surgical procedure that had as much as a 50 percent chance of altering her pain and improving her condition. *Id*. at 4.

Next, Defendant argues that the verdict was neither inadequate nor against the weight of the evidence. *Id*. at 6. Defendant asserts that Plaintiff's two medical witnesses offered contradictory testimony on the issue of Complex Regional Pain Syndrome and surveillance footage "depicted the [P]laintiff easily engaged in the ordinary activities of daily life in stark contradiction to her claims of unremitting pain and disability." *Id*. Therefore, Defendant claims that "[i]f the jury concluded that [P]laintiff was magnifying or exaggerating her complaints, it would certainly be reasonable to dismiss her claim of economic damages." *Id*.

Lastly, Defendant argues that the Court did not err in charging the jury on causation because the jury manifestly understood the Court's charge because they awarded damages to Plaintiff. *Id*. at 7. Defendant maintains that "Plaintiff fails to explain how her 'substantial rights' were adversely affected" because she merely claims that the fact that the Court did not define proximate causation affected her substantial rights. *Id*. Defendant further maintains that "if [P]laintiff had been 'no caused' by the jury, one might be able to understand the thrust of [P]laintiff's complaint. However, in this case the jury awarded damages to the [P]laintiff and, accordingly, manifestly understood the concept of proximate causation."

## III.    Discussion

Federal Rule of Civil Procedure 59 provides that a new trial may be granted to any of the parties in an action in which there has been a trial by jury. *See* FED. R. CIV. P. 59(a)(1)(A). "A

7

trial court should grant a motion for a new trial when, in its opinion, 'the verdict is contrary to the

great weight of the evidence, thus making a new trial necessary to prevent a miscarriage of

justice.'"  *Lightning Lube, Inc. v. Witco Corp.*, 802 F. Supp. 1180, 1185 (D.N.J. 1992) *quoting*

*Fineman v. Armstrong World Industries, Inc.*, 774 F. Supp. 266, 269 (D.N.J. 1991); *see also*

*Olefins Trading Inc. v. Han Yang Chem Corp.*, 9 F.3d 282, 289 (3d Cir. 1993).  Although a trial

court is vested with wide discretion when ruling on a motion for a new trial, the court's

discretion is not unlimited.  *Lightning Lube*, 802 F. Supp. at 1185.  When a motion for a new trial

is granted because the trial court finds that the verdict is contrary to the great weight of the

evidence,

> [T]he court has to some extent at least substituted [its] judgment of the facts and
> the credibility of the witnesses for that of the jury.  Such an action effects a
> denigration of the jury system and to the extent that new trials are granted the
> judge takes over, if he does not usurp, the prime function of the jury as the trier of
> facts.

*Id.* at 1186 (quoting *Fineman*, 774 F. Supp. at 268).  Furthermore, "a motion for a new trial may

be granted on a number of grounds:

> Although Fed. R. Civ. P. 59 does not enumerate the grounds for a new trial, the following
> have been recognized as general grounds for a new trial: the verdict is against the clear
> weight of the evidence; damages are excessive; the trial was unfair; and that substantial
> errors were made in the admission or rejection of evidence or the giving or refusal of
> instructions.

*Lightning Lube*, 802 F. Supp. at 1186 (quoting *Northeast Women's Center, Inc. v. McMonagle*,

689 F.Supp. 465 (E.D.Pa.1988), *aff'd in relevant part*, 868 F.2d 1342 (3d Cir.1989)).

The first question presented is whether the Court committed prejudicial error and plain

error in instructing the jury on the issue of the failure to mitigate damages.  Defendant relies upon

*Albert v. Monarch Federal Sav. and Loan Ass'n.*, 327 N.J. Super. 462 (App. Div. 2000), in

which the Court stated:

> "[A]s the court observed in *Cline* v. *United States, 270 F. Supp.* 247, 251 (S.D.
> Fla. 1967), '[t]here is ... some element of doubt and risk attendant upon each
> surgical operation.' Consequently, if a trial court's obligation to instruct the jury
> concerning the plaintiffs duty to mitigate damages by undergoing surgery were
> contingent upon a medical expert's opinion that a surgical procedure was
> guaranteed to be successful, there never would be a case in which such an
> instruction would be appropriate. However, unless a surgical procedure poses a
> 'peril to life,' 'undue risk to health,' or 'anguish that goes beyond the bounds of
> reason,' a mitigation instruction is appropriate if evidence is presented that
> surgery 'offers a reasonable prospect of restoration or relief from the disability.'"

*Albert* at 466. In the instant case it was appropriate for a mitigation instruction to be given to the

jury given Dr. Mortazavi's testimony that Plaintiff had as much as a 50 percent chance of

reducing her pain and improving her condition should she have elected to have the routine

procedure of stellate ganglion blocks to treat her Complex Regional Pain Syndrome.

The next question presented is whether the Court erred by allowing Aaron Sporn, M.D. to

base his opinion upon a surveillance tape and to testify to opinions contained in his second report

that was submitted in violation of the discovery rules and Court Order. The Court notes that

Plaintiff's motion *in limine* to preclude Dr. Sporn's May 6, 2008 supplemental report  M.D. was

denied. *See* [dkt. entry no. 33]. The Court also notes that the surveillance tape was served upon

Plaintiff during as part of discovery and at trial Plaintiff waived authentication of the tape and

had experts testify who acknowledged that Plaintiff was depicted in the videotape. Furthermore,

the Court agrees with Defendant's position that because "Rule 703 permits an expert to comment

on evidence adduced at trial . . . Dr. Sporn would have been permitted to comment on the

videotape at trial . . . [thus,] his supplemental report did nothing more than impart advance

insight into Dr. Sporn's testimony." (Def.'s Opp'n Br. at 2.) Therefore, the Court finds no error

in eitherpermitting Dr. Sporn's supplemental report or his reliance on videotape surveillance of Plaintiff and finds this argument to be irrelevant to the Court's consideration of the motion for a new trial.

Next, the Court is presented with the issues of whether the jury's verdict is either inadequate or against the weight of the evidence. Plaintiff argues that Dr. Sporn did not offer his opinions to a reasonable degree of medical certainty and based his opinion in part upon video surveillance of not Plaintiff, but rather Plaintiff's mother (Pl.'s Br. at 21-23.) Plaintiff also argues that the evidence presented included damages so far above the amount awarded to the jury that the jury's verdict cannot be justified. *Id*. However, the Court notes that Plaintiff's two medical witnesses offered contradictory testimony on the issue of Complex Regional Pain Syndrome and surveillance footage "depicted the [P]laintiff easily engaged in the ordinary activities of daily life in stark contradiction to her claims of unremitting pain and disability." (Def.'s Opp'n at 6.) Therefore, such testimony and evidence provided a basis for the jury's verdict. The Court also notes that Plaintiff's claim for future lost wages were based on income earned as a baker, a job she never before held. Based on that information, the jury could have reasonably inferred that the future lost wages were exaggerated and speculative. For these reasons, the Court finds that the jury's verdict was adequately supported by the evidence.

Lastly, the Court is presented with the question of whether the Court committed prejudicial and plain error in failing to give an adequate charge on causation. In any case based upon a theory of negligence, the plaintiff bears the burden of proving that the defendant breached a duty of reasonable care which constituted proximate cause of the defendant's injuries. Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 139-40 (1951). The jury charge in the present case fairly

informs the jury of these same concepts.  Moreover, the fact that the Plaintiff was awarded

damages demonstrates that the jury understood the concept of causation.  Obviously, the jury

valued Plaintiff's claims of pain and permanency differently.  That valuation is, of course,

uniquely the province of the jury.

## IV.     Conclusion

For the reasons stated above, the Court finds that the jury verdict is supported by credible

evidence presented to the jury.  As a footnote, the Court simply points out that the jury is

normally, and was in this case, uniquely qualified to make credibility determinations by virtue of

its collective judgment.  Accordingly, the Plaintiff's motion for a new trial shall be denied.

An appropriate order accompanies this motion.

**DATED:** February 27, 2009.

s/ *John J. Hughes*
**JOHN J. HUGHES**
**UNITED STATES MAGISTRATE JUDGE**